McBEE ET AL. *v.* BALTIMORE COUNTY ET AL.

[No. 118, September Term, 1959.]

*Decided January 20, 1960.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Harrison L. Winter,* with whom was *Robert L. Karwacki* on the brief, for appellants.

*Walter R. Haile, Deputy County Solicitor,* with whom was *Johnson Bowie, County Solicitor,* on the brief, for appellee Baltimore County.

*Richard W. Case,* with whom was *Roger D. Redden* and *Smith, Somerville & Case* on the brief, for appellees Cornelius V. Roe and wife.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree passed June 5, 1959, dismissing a bill of complaint filed in 1956, seeking injunctive and declaratory relief against the action of the County Commis-

sioners of Baltimore County in reclassifying from residential (R-6) to business local use (B-L), a portion of a tract of land owned by the appellees, Roe. The appellants make two main contentions, (1) that the action was arbitrary, capricious, discriminatory or illegal, and (2) that a prior decision in 1947, by the circuit court, Judge Murray, affirming a finding of the Board of Zoning Appeals as to traffic hazards, was *res judicata.*

The Roe property in question, containing about four acres of ground, is located on the east side of Bellona Avenue, in what is known as Ruxton, between its intersections with Malvern Avenue and Ruxton Road. To the east, adjoining the property reclassified, the Roes own other property on which is a substantial residence. Just south of the Roe property and across Bellona Avenue is an Esso gas station. Parallel to Bellona Avenue and to the west thereof is the main line of the Pennsylvania Railroad to Harrisburg. Across the tracks and to the west is the L'Hirondelle Club, with its swimming pool and tennis courts. Immediately to the north of the Roe property, separated by Ruxton Road, is an Amoco gas station; next to it to the north, a building used by a cleaning and dyeing concern; next, the Ruxton Pharmacy, and a blacktop parking area. Facing this area are: the Wilmington Country Store, the Ruxton Hardware Store, a snack shop, a dress shop, and a dentist's office. Immediately to the north, across La Belle Avenue, are: a cleaning establishment, a beauty shop, a bakery store, a liquor store, a grocery store and two small parking areas, one in front of and one to the north of these establishments. Existing parking facilities for the commercial establishments described above are inadequate, there being a deficiency, according to one witness, of from forty to sixty spaces. Ruxton has been a residential community for many years, but there was testimony that the population in the Ruxton area had doubled since 1941 and that many new houses had been built. It was agreed that there are still large tracts of undeveloped land available for future residential development, and that such development will probably bring additional demand for commercial areas somewhere in the vicinity. The contest

hinges upon the appropriateness of the Roe tract to fulfill such future needs.

On January 2, 1947, the Zoning Commissioner of Baltimore County granted a petition to reclassify the Roe property from A residential to E commercial under the 1945 Zoning Act. He stated that when the original Act had been passed it had been "seriously considered to extend the commercial area to include the area" in question, and that the tract was best suited for commercial development, and quite unsuited for residential development. The Board of Zoning Appeals reversed, but gave no reasons for its action. On appeal to the circuit court, the board was affirmed, the court stating that it thought the question of traffic hazard was fairly debatable on the record, and applying the substantial evidence rule.

In 1955 the county promulgated a new comprehensive scheme of zoning regulations. A change in classification of the Roe property in question was recommended, in turn, by the Staff of the Planning Commission, the Commission itself, and the Zoning Commissioner. It is conceded that all of the requisite procedural steps for the adoption of the new land use maps and zoning regulations were taken. All of the officials concerned agree that the Roe property was appropriate for commercial zoning as a normal extension of existing commercial properties which surrounded it on three sides. After various hearings, the County Commissioners adopted the proposal and map on January 10, 1956.

The appellants produced evidence in the trial below, that there had been no marked change in the character of the neighborhood since 1945, and that the volume of traffic on Bellona Avenue had doubled. The Baltimore Beltway had, of course, been constructed some distance to the north, and before the time of trial it had been connected with the Charles Street extension to the east. There was testimony of a proposal to widen Bellona Avenue in 1960, but it was conceded that the work might be postponed because of delay in the so-called Twelve Year Plan and increasing costs. There was also testimony that travel on Bellona Avenue was dangerous, and that additional commercial facilities would increase the

danger, but it was further testified that even without improvement of the road, there would be no congestion with a properly designed turn-off or intersection into the parking area serving the proposed commercial development. It was also testified that on the basis of the most recent counts, Bellona Avenue was being used to only one-half its capacity, and that conditions had improved since the opening of the new expressway. There was testimony that the property was more perfectly adapted for use as a neighborhood shopping center than any other property in the Ruxton area, and that its location there would not adversely affect the properties immediately adjacent, the closest being that retained by the Roes. Many of the objectors lived at considerable distances from the property in question.

The appellants' claim that the action of the County Commissioners was arbitrary seems to be based on a contention that factually and legally it was no more than a rezoning of a single tract. We do not agree. The Commissioners made a comprehensive study and revision of a large portion of the Ninth Election District zoning boundaries, as a part of a larger revision of the maps and uses covering the entire county. Indeed, it would appear that more careful consideration was given in 1956 to future needs, in the light of zoning experience and the marked changes in population, transportation, business and industrial needs, than could possibly have been the case in 1945.

The fact that no changes were made in this particular section other than an extension of a commercial area earmarked in 1945, does not establish that the action taken was piecemeal or spot zoning. Cf. *Eckes v. Board of Zoning Appeals,* 209 Md. 432, *Huff v. Bd. of Zoning Appeals,* 214 Md. 48, *Fuller v. County Comm.,* 214 Md. 168, *St. Mark's, Etc., Church v. Doub,* 219 Md. 387, and *Hewitt v. Baltimore County,* 220 Md. 48. *Mettee v. County Comm.,* 212 Md. 357 is distinguishable on the facts, as in *Zinn v. Board of Zoning Appeals,* 207 Md. 355. Here, the change that was seriously considered in 1945 was recognized in 1956 as a proper one by all the public authorities. We think the action taken was at least fairly debatable. Where the matter is studied com-

prehensively, the inquiry into time and space with respect to change is naturally more extensive than on a single application. In short, the County Commissioners were here exercising a plenary power, delegated by the General Assembly, to legislate a new zoning for the whole county. The new map reflects changes occurring over a wide area, and takes into account future public needs and purposes. Hence the legislative body is not confined to a consideration of changes in the immediate neighborhood. The so-called "change or mistake" rule applicable to piecemeal rezoning cases as stated in *N. W. Merchants Term. v. O'Rourke,* 191 Md. 171, 191, is not controlling here, because the new legislation is itself a comprehensive plan designed to cover a substantial area and to supersede the old zoning throughout that area. When such a new map is adopted, it is entitled to the same presumption that it is correct as is an original zoning.

On the point of traffic congestion, the chancellor found that funds were available, that survey parties were already at work, and engineering plans to widen Bellona Avenue were complete. The actual widening was scheduled for 1960. He distinguished *Price v. Cohen,* 213 Md. 457, on the facts, and we agree. Cf. *Missouri Realty, Inc. v. Ramer,* 216 Md. 442, *Muhly v. County Council,* 218 Md. 543, 547, and *Adler v. Baltimore,* 220 Md. 623. Moreover, there was testimony that, given proper traffic access control, conditions would be improved by the creation of additional parking spaces. We think the evidence presented a fairly debatable issue.

As to the contention that the decision of the circuit court in 1947 was *res judicata,* we have already noted that Judge Murray did not find that there was a traffic hazard, but merely that there was evidence from which the board could have so found. The appellants rely strongly upon *Whittle v. Bd. of Zoning Appeals,* 211 Md. 36. In that case, as in the earlier cases cited, the application of the rule of *res judicata* was predicated upon the fact that there had been no substantial change in conditions, and that the same issue was presented. If we assume, without deciding, that the doctrine would be applicable at all in a case where the earlier decision was essentially that of an administrative agency, rather than

of a court of record, *Knox v. City of Baltimore,* 180 Md. 88, there was evidence in the instant case of a change in the traffic pattern caused by the construction of the Beltway and Charles Street extension, and by the proposed widening of Bellona Avenue, which had passed the planning stage. Moreover, the issue in the earlier case was not the same as here. As we have pointed out, there is a vast difference between an appeal from an administrative determination that rezoning was unjustified, and an equity proceeding attacking the validity of legislative action adopting a new and comprehensive zoning plan. Cf. *St. Mark's, Etc., Church v. Doub, supra* (p. 394).

*Decree affirmed, with costs.*