DOROTHY COPPOLINO ET AL. *v.* COUNTY BOARD OF APPEALS OF BALTIMORE COUNTY

\* \* \*

JOHN L. ASKEW ET AL. *v.* COUNTY BOARD OF APPEALS OF BALTIMORE COUNTY

[No. 67, September Term, 1974.]

*Decided November 18, 1974.*

---

360

The cause was argued before MORTON, DAVIDSON and LOWE, JJ.

*Harry S. Swartzwelder, Jr.*, for appellants Dorothy Coppolino et al.

*James D. Nolan* and *Newton A. Williams*, with whom were *Nolan, Plumhoff & Williams* on the brief, for appellants John L. Askew et al.

No appearance for appellee, County Board of Appeals of Baltimore County.

DAVIDSON, J., delivered the opinion of the Court.

This case presents the narrow question of whether the County Council of Baltimore County (Council) committed basic and actual "mistake", as that term is used in zoning law, when on 24 March 1971 it adopted a comprehensive zoning map on which the subject property, consisting of 32.907 ± acres, was classified as D.R.-5.5 (Density Residential, 5.5 dwelling units per acre).

Most of the facts are not in dispute. The subject property, roughly rectangular in shape, lies in an area bounded by Belair Road on the west, Joppa Road on the north and Ebenezer Road on the south. All of the land lying within this area was classified in the D.R.-5.5 zone by the comprehensive

zoning map adopted by the Council on 24 March 1971. The subject property fronts on the north side of Ebenezer Road and lies approximately one mile to the east of its intersection with Belair Road. It is bounded on the east by a relatively large expanse of land zoned D.R.-5.5 which is developed with single family residences. On the north, the subject property adjoins land zoned D.R.-5.5 which is essentially undeveloped. On the west, the subject property is bounded by a relatively large expanse of land zoned D.R.-5.5 which is developed with single family residences and which, in turn, is bounded by land upon which the Perry Hall Elementary and Junior High Schools are located. The Perry Hall High School, located on the south side of Ebenezer Road, confronts the subject property on the south. The elementary school is operating at near capacity while the junior and senior high schools are over capacity. Several additions to existing school facilities and some new schools are being planned.

The subject property is unimproved and heavily wooded. The eastern portion of its frontage reaches an elevation of 190 feet, an elevation approximately 35 feet above that of Ebenezer Road. The property falls from the 190 foot elevation at its southeast corner to a 120 foot elevation at its northwest corner. A large stream and flood plain runs along a portion of the western boundary of the subject property and then cuts across its northern corner. Test borings made in the flood plain indicate that below the earth's surface there is rock which reaches a depth of approximately four feet and a visual inspection has revealed rock outcroppings all along the stream.

Since at least 1966 a new road, Perry Hall Boulevard, with a right-of-way of 110 feet, has been proposed to be located along a portion of the western boundary of the subject property. While the alignment and grade of this road already has been delineated, its actual design has not yet been developed. The Capital Budget indicates that Perry Hall Boulevard will not be constructed until FY 77-78. Until this road is built, all access to the subject property is via the intersection of Ebenezer and Belair Roads. Traffic at this

intersection is at or over capacity so that an extensive delay occurs during peak hours. The construction of Perry Hall Boulevard should alleviate traffic congestion at this intersection.

Originally, the subject property consisted of three separate parcels of land. Parcel "A", containing approximately 16 acres, was "L" shaped, with the east-west leg of the "L" being a rectangle containing all of the 1900 foot frontage along Ebenezer Road and the north-south leg of the "L" being a rectangle containing the southwestern portion of the tract. Parcel "B", containing about four acres of land, was roughly triangular in shape and adjoined the northern boundary of the north-south leg of the "L". It comprised the northwestern portion of the subject property. Parcel "C", containing about 12 acres of land, also an essentially rectangular piece of property, adjoined the eastern boundary of the north-south leg of the "L" and the northern boundary of the east-west leg of the "L". It contained all of the eastern portion of the property other than the rectangle of land comprising the east-west leg of the "L". When the three parcels are united into one, as in this application, they form, as noted earlier, an approximate rectangle.

Parcel "A" was classified in the R.A. zone (Residential-Apartments) by the comprehensive zoning map adopted by the Council in August, 1966. The same comprehensive zoning map classified both parcels "B" and "C" in the R.-6 zone (Residence, one or two family, lot area 6000 square feet). In 1967 a petition was filed requesting reclassification of Parcel "B" from the R.-6 zone to the R.A. zone. The petition alleged that the comprehensive zoning map was in error with respect to Parcel "B". In a report dated 20 December 1967, the planning staff of the Office of Planning and Zoning (Planning Staff) said:

> "We regard the requested rezoning as a logical but minor consequence of an adjusted alignment for Perry Hall Boulevard, and we thus have no objection to the reclassification. We do not believe

that the reclassification should be regarded as a change which in itself would justify further rezoning in this area in the future."

The Zoning Commissioner (Commissioner) granted the requested reclassification of Parcel "B" to the R.A. zone on 3 January 1968. No appeal was taken.

On 3 August 1970 the Council amended the Baltimore County Zoning Regulations,[1] such provisions to take effect 19 September 1970. By virtue of § 100.3A, which created a new set of zoning classifications, the classification of parcels "A" and "B", formerly R.A., was redesignated D.R.-16 (Density-Residential, 16.0 density units per acre) while that of parcel "C" was changed from R.-6 to D.R.-5.5.

On a proposed zoning map dated 10 September 1970, prepared by the Planning Staff and approved for public hearing by the Baltimore County Planning Board (Planning Board), the entire 32 ± acre subject property was assigned a D.R.-16 zoning classification. On a subsequent zoning map, dated 24 November 1970, recommended to the Council by the Planning Board, following its "second round" of public hearings, the 32 acre tract was again designated in the D.R.-16 zone. No reasons for these designations appear in the record. On 24 March 1971 the Council, after holding numerous public hearings, adopted a comprehensive zoning map for the area. The subject property, as a whole, was classified in the D.R.-5.5 zone. Thus, the recommendation of the Planning Staff and the Planning Board to extend D.R.-16 zoning to that portion of the subject property which was formerly parcel "C" was rejected. Moreover, those parts of the subject property originally parcels "A" and "B", both recommended by the Planning Staff and the Planning Board for retention in the D.R.-16 zone, were "downshifted" to the D.R.-5.5 zone. Several other properties lying on the south side of Ebenezer Road, previously classified as D.R.-16 and recommended for retention in that zone, were also

---

1. These amendments were approved by the County Executive and officially enacted on 5 August 1970.

"downshifted" to D.R.-5.5. The reasons for these actions do not appear in the record.

Within three weeks of the adoption of the comprehensive zoning map [2] the legal owners of the property petitioned the Commissioner for a reclassification of the subject property to the D.R.-16 zone, alleging that there was error in the comprehensive zoning map with respect to the subject property. In its report concerning this petition the Planning Board noted that the intersection of Ebenezer and Belair Roads was operating at capacity; that the grant of the requested reclassification could change trip density from 1,650 trips per day to 4,000 trips per day; and that there were no plans in the Capital Budget through 1977 for the construction of Perry Hall Boulevard. The Board went on to say:

> "The tract is surrounded on three sides by single-family houses, or vacant land for such use. The tract could be developed in apartments at D.R.-5.5 density.[3] D.R.-16 zoning in the middle of the single-family development would constitute spot zoning. Furthermore, after reconsidering the Council's actions not only on this property but in "downshifting" other properties from D.R.-16 to D.R.-5.5 on Perry Hall Boulevard, the petitioners' proposal for D.R.-16 represents an intrusion into a moderate density neighborhood."

The Board reversed the position it had taken prior to the adoption of the 1971 comprehensive rezoning map and recommended that the subject property be retained in the

---

**2.** The date upon which the zoning application was filed does not appear in the record. The provisions of Baltimore County Code (1972 Cum. Supp.) §§ 22-22 (c) and (d) support an inference that the application was filed prior to 16 April 1971.

**3.** *See* Baltimore County Zoning Regulations (1970) § 1B01.1A. Among the permitted uses in D.R. zones are the following: one-family detached houses, one-family semi-detached houses, one-family group houses, two-family houses, town-house apartment buildings, garden apartments, other apartment buildings; and churches, hospitals, schools and research institutes. Section 1B01.1B sets forth certain restrictions on these permitted uses.

D.R.-5.5 classification. After a hearing the Commissioner found that the subject property could be developed in the D.R.-5.5 classification; that the land surrounding the subject property on three sides was zoned D.R.-5.5, and that the development of the subject property in the D.R.-16 zone would generate a trip density which the intersection of Ebenezer and Belair Roads "could not handle." He concluded that the comprehensive zoning map was not in error in classifying the subject property in the D.R.-5.5 zone. On 22 March 1972 he denied the request for reclassification to the D.R.-16 zone.

An appeal was taken to the Board of Appeals (Board). The recommendation of the Planning Board was included as a part of the file. In addition a number of experts testified on behalf of the owners that the topography of the subject property, the presence of rock, drainage difficulties and other physical characteristics, all of which would entail prohibitive development costs, as well as the proximity of Ebenezer Road and Perry Hall Boulevard made the subject property unsuitable for development in the D.R.-5.5 zone. In contrast they testified that all of these factors combined with the availability of water and sewer, the location of minimal but adequate shopping facilities and a social and recreational center (Perry Hall High School) in close proximity to the subject property, made the tract eminently fitted for development in the D.R.-16 zone. Moreover, they said that the grant of the requested reclassification would not depreciate property values. They further stated that any adverse effect on traffic would be minimal and temporary and would be eliminated by the construction of Perry Hall Boulevard. Schools would not be over-burdened, they maintained, because the number of school children generated by the 524 apartment units permitted in the D.R.-16 zone would be less than that generated by the 181 single family units permitted in the D.R.-5.5 zone. They concluded that the Planning Board recommendation for D.R.-16 zoning on the entire tract, made prior to the adoption of the 1971 map, was correct and that the Council was in error in designating the subject property in the D.R.-5.5 zone on that map.

The protestants, neighboring homeowners, pointed to a report of the Planning Board issued during the October to April Cycle 1971-72 [4] which indicated that as a result of the comprehensive rezoning of 1971 the county's inventory of vacant land zoned D.R.-16 was increased from 3,200 acres to 3,700 acres; that that inventory could house two and one-half times the population anticipated by 1975; and, consequently, that such inventory would satisfy the need for apartment development until 1975 by which time the Planning Board would be planning for the comprehensive zoning of 1976.[5] They offered testimony that the requested reclassification would have an adverse effect on the value of their properties; would exacerbate existing flooding problems on their properties; would aggravate already existing traffic congestion; and would place an additional burden on already over-capacitated schools.

On 17 July 1973 the action of the Commissioner was reversed in part and affirmed in part by the majority of the three member Board which felt that the Council's action was "clearly in error and confiscatory in nature," and that the petitioners "should at least be returned to the status which existed prior to the adoption of the 1971 comprehensive zoning map." Accordingly, the Board granted reclassification of 20 $\pm$ acres of the subject property (former parcels "A" and "B") to D.R.-16 and retained the remaining 12 $\pm$ acres (former parcel "C") in the D.R.-5.5 zone.

Two appeals were filed in the Circuit Court for Baltimore County, one by the protestants who appealed from that portion of the order which reclassified former parcels "A" and "B" to the D.R.-16 zone, and the other by the owners of

---

4. *See* Baltimore County Code (1972 Cum. Supp.) § 22-22 (c). This section establishes a schedule of semiannual recurring periods for the purpose of considering contemporaneous zoning reclassification petitions.

5. *See* Baltimore County Code (1972 Cum. Supp.) § 22-20 (d). This section requires the Planning Board to recommend to the Council a complete countywide zoning map within the one-year period immediately preceding April 16, 1976, and within the one-year period immediately preceding every fourth year thereafter. The provisions of this section are mandatory. Code § 22.21.1 requires the Council to adopt a countywide zoning map before October 16, 1976 and before October 16 of each of the later years in which the Planning Board is required to submit a recommended countywide map.

the subject property who appealed from that portion of the order which retained former parcel "C" in the D.R.-5.5 zone. On 25 January 1974 Judge H. Kemp MacDaniel found that the issues before the Board were "fairly debatable" and affirmed the decision of the Board. Both the protestants and the owners appealed to this Court.[6]

The applicable test for determining the scope of judicial review in a zoning case alleging error in a comprehensive rezoning has recently been restated in *Trainer v. Lipchin*, 269 Md. 667 (1973), in which the Court of Appeals, quoting from *Stratakis v. Beauchamp*, 268 Md. 643, 652-53 (1973), said:

> " ' . . . Where a legislative body, or a board of county officials, pursuant to authority conferred upon it, has granted a rezoning of property, the question on judicial review is whether or not such action is arbitrary and discriminatory or fairly debatable, *Montgomery County v. Pleasants*, 266 Md. 462, 295 A. 2d 216 (1972); *Himmelheber v. Charnock*, 258 Md. 636, 267 A. 2d 179 (1970); *Chevy Chase Village v. Mont. Co.*, 258 Md. 27, 264 A. 2d 861 (1970); *Smith v. Co. Comm'rs of Howard Co.*, 252 Md. 280, 249 A. 2d 708 (1969). We shall follow that test in considering this appeal.
>
> "While, in recent years, we have had occasion to enunciate a number of important principles applicable to the law of zoning, perhaps none is more rudimentary than the strong presumption of the correctness of original zoning and of comprehensive rezoning. To sustain a piecemeal change in circumstances such as those present here, *strong* evidence of mistake in the original zoning or comprehensive rezoning or evidence of substantial change in the character of the neighborhood must be produced, *Rockville v. Henley*, 268 Md. 469, 302 A. 2d 45 (1973); *Heller v. Prince George's Co.*, 264

---

6. Baltimore County did not appear in the proceedings either before the Circuit Court or before this Court.

Md. 410, 412, 286 A. 2d 772 (1972); *Creswell v. Baltimore Aviation,* 257 Md. 712, 721, 264 A. 2d 838 (1970). Since, as we have also said, this burden is onerous, *Cabin John Ltd. v. Montgomery Co.,* 259 Md. 661, 271 A. 2d 174 (1970); *Creswell v. Baltimore Aviation, supra; Wells v. Pierpont,* 253 Md. 554, 253 A. 2d 749 (1969), the task confronting appellants [appellees], whose application followed the comprehensive rezoning by merely four months, is manifestly a difficult one.' " (emphasis in original) 269 Md. at 672-73.

We find that the owners have failed to meet that test.

The owners initially contend that there was error in the 1971 comprehensive zoning map which "downshifted" former parcels "A" and "B" to the D.R.-5.5 zone. They maintain that the then equivalent of the D.R.-16 classification, R.A. (hereinafter referred to as D.R.-16), assigned to former parcel "A" by the comprehensive rezoning of 1966, is presumed to be correct; that the correctness of this action was reaffirmed in 1968 when the Commissioner granted reclassification of former parcel "B" to the D.R.-16 zone, and was again reaffirmed when the Planning Staff and the Planning Board recommended in 1970 not only that former parcels "A" and "B" should be retained in the D.R.-16 zone but also that former parcel "C" should be reclassified to the D.R.-16 zone. The owners maintain that the then existing zoning of the subject property could not properly be altered by the Council unless there was evidence of error in the D.R.-16 classification assigned in 1966 or change in the character of the neighborhood subsequent to the assignment of that classification.

In support of this position the owners point out that Baltimore County Code (1972 Cum. Supp.) §§ 22-20 and 22.22.1 now require that a comprehensive rezoning of the entire county take place at least once in every four years.[7]

---

7. *See* note 5, *supra.*

They argue that the frequent use of the comprehensive rezoning technique, absent the "change or mistake" rule, will permit arbitrary and capricious action on the part of the Council, which will undermine the permanence and stability of zoning classifications intended to be protected by the presumption of validity accorded comprehensive rezoning.

The Court of Appeals and this Court have consistently held that the "change or mistake" rule is not controlling in cases involving comprehensive rezoning. *Scull v. Coleman,* 251 Md. 6, 12 (1968); *Trustees v. Baltimore County,* 221 Md. 550, 560-61 (1960); *McBee v. Baltimore County,* 221 Md. 312, 316-17 (1960); *Roberts v. Grant,* 20 Md. App. 247, 253 (1974). The reason for this rule was set forth cogently in *McBee, supra,* at 316-17, where the Court of Appeals pointed out that:

> "Where the matter is studied comprehensively, the inquiry into time and space with respect to change is naturally more extensive than on a single application. In short, the County Commissioners were here exercising a plenary power, delegated by the General Assembly, to legislate a new zoning for the whole County. The new map reflects changes occurring over a wide area, and takes into account future public needs and purposes. Hence, the legislative body is not confined to a consideration of changes in the immediate neighborhood. The so-called "change or mistake" rule applicable to piecemeal rezoning cases as stated in *N.W. Merchants Term. v. O'Rourke,* 191 Md. 171, 191, is not controlling here, because the new legislation is itself a comprehensive plan designed to cover a substantial area and to supersede the old zoning throughout that area. When such a new map is adopted, it is entitled to the same presumption that it is correct as is an original zoning."

We see nothing in the "cyclical" zoning scheme adopted by the Council which impels a modification of this rule. The fact that comprehensive rezoning may occur in Baltimore

County with greater frequency than has been the case in the past does not alter the fact that it will result from careful study of changes occurring in wide areas and an assessment of future public needs and purposes. Indeed, in our view, the system will enhance the stability and permanence of zoning classifications by assuring that the majority of zoning classifications are determined in accordance with a carefully considered integrated plan of development, based upon a full understanding of the present and future needs of a broad area, rather than upon a piecemeal review of limited scope. In any event, arbitrary and capricious action by the Council is prevented, and stability and permanence assured by the requirement that a comprehensive rezoning, in order to be valid, must bear a substantial relationship to the public health, comfort, order, safety, convenience, morals, and general welfare. *Norbeck v. Montgomery County*, 254 Md. 59, 66 (1969). Accordingly, we hold that under the cyclical zoning process established by Baltimore County the "change or mistake" rule is not controlling and that the absence of a showing of either change or mistake prior to a comprehensive rezoning does not constitute error.

The owners next complain that the Council erred in assigning the D.R.-5.5 classification to the subject property in that the subject property is unsuited for development in that zone. Indeed, the Board found the evidence before it sufficient not only to establish "error" but also to establish that the D.R.-5.5 zoning was "confiscatory in nature." In our view the evidence presented was not sufficient to establish either "mistake" or an "unconstitutional confiscation" or, indeed, even to make those issues fairly debatable.

A number of expert witnesses expressed the opinion that the subject property was "unsuitable" for development in the D.R.-5.5 zone because of its topography, rock outcroppings, and proximity to Ebenezer Road and the proposed Perry Hall Boulevard. Yet they themselves conceded that single-family houses could be developed on the subject property, although there was doubt as to whether the maximum permitted density of 181 units could be achieved. They admitted that no details concerning

development costs of single-family homes had been "worked up," making it impossible to know whether that type of development would result in a profit or a loss. Furthermore, they acknowledged that single-family houses have been built on land adjoining the subject property on the east and west, some of which had topography similar to that of the subject property, and some of which fronted along Ebenezer Road. Thus, the basis of the experts' opinion that the subject property was unsuitable for D.R.-5.5 development was confined exclusively to a consideration of the tract's development for single-family use. There was not an iota of evidence presented to show that the maximum 181 dwelling units permitted in the D.R.-5.5 zone could not be developed successfully in some manner other than detached homes on the subject tract.[8] In addition, there was no evidence presented to show that the subject property was unsuitable for development by way of special exception uses.[9] Thus, the expert opinions that the subject property was not suitable for development in the D.R.-5.5 zone were totally unsupported by facts.

The Court of Appeals and this Court have stated that an opinion, even that of an expert, is not evidence strong or

---

8. In their brief the owners assert that the flexibility allowed by the present D.R.-5.5 zoning classification was not available to them because much of the subject property falls within a residential transition area. Consequently, the tract is confined to single-family use. See Baltimore County Zoning Regulations (1970) § 1B01.1B. Section 1B01.1B.1.a. defines a residential transition area as:

"any D.R.-1, D.R.-2, D.R.-3.5, D.R.-5.5, or D.R.-10.5 zone or part thereof which lies (a) within 300 feet of any point on a dwelling other than an apartment building, or (b) within 250 feet of any point lying within a vacant lot of record which is itself wholly or partially classified as D.R. and which is two acres or less in area."

Section 1B01.1B.1.b., which sets forth the use restrictions in such transition areas, would limit those portions of the subject property lying within a residential transition area to single-family development.

The contention in the brief is unsupported by the evidence. Accordingly, we cannot consider this factor on appeal. Md. Rule 1085.

9. See Baltimore County Zoning Regulations § 1B01.1C, which establishes the following uses, among others, as permitted by way of special exception: conservatories for music or other arts; convalescent homes; community buildings, swimming pools, golf courses, country clubs, or other, similar civic, social, recreational or educational uses; and· private colleges.

substantial enough to show error in the comprehensive rezoning or confiscation unless the reasons given by the expert as the basis for his opinion, or other supporting facts relied upon by him, are themselves substantial and strong enough to do so. *Stratakis v. Beauchamp, supra,* at 643, 655 (1973); *Westview Park v. Hayes,* 256 Md. 575, 582 (1970); *Smith v. Co. Comm'rs of Howard County,* 252 Md. 280, 284 (1969); *Iverson v. Zoning Board,* 22 Md. App. 265, 270 (1974). Moreover, the Court of Appeals has repeatedly held that in order to obtain a rezoning on the basis of an unconstitutional confiscation, an applicant must show that he has been deprived of all reasonable use of his property and that it cannot be used for any of the permitted uses in the existing zone. *Rockville v. Stone,* 271 Md. 655, 662-64, 319 A. 2d 536 (1974); *Trainer v. Lipchin, supra,* at 675-76; *Stratakis, supra,* at 654; *Mayor and Council of Rockville v. Henley,* 268 Md. 469, 477 (1973); *Cabin John Ltd. v. Montgomery Co.,* 259 Md. 661, 670 (1970); *Montgomery Co. Council v. Kacur,* 253 Md. 220, 229 (1969). Viewed in this light the expert testimony presented here does not pass muster.

The owners additionally assert that the Council erred because it failed to take into account the fact that Perry Hall Boulevard was to be constructed in FY 1977-78. Experts presented by the owners conceded that the intersection of Ebenezer and Belair Roads was overburdened at least in the evening peak hours. Nonetheless, they maintained that this problem was temporary in nature and would be alleviated when the proposed Perry Hall Boulevard was constructed.

The term error, as it is used in zoning law, does include the failure to take into account projects or trends reasonably foreseeable of fruition in the future. But in order to establish error there must be evidence to show that such developments were not, in fact, or could not have been, taken into account so that the Council's action was premised on a misapprehension. *Jobar Corp. v. Rodgers Forge,* 236 Md. 106, 112 (1964); *Rohde v. County Board,* 234 Md. 259, 267-68 (1964); *Pressman v. Baltimore,* 222 Md. 330, 338-39 (1960); *see Miller v. Abrahams,* 239 Md. 263, 268, 272-274 (1965). Here the record shows that the construction of Perry

Hall Boulevard was planned as long ago as 1966; that in 1967 the Council granted reclassification to former parcel "B" because of a readjustment of that road; and that the Council had, in its Capital Budget, included money for the construction of that road in FY 1977-78. All of this evidence supports an inference that at the time of the comprehensive rezoning in 1971, the Council was aware of the proposed construction of Perry Hall Boulevard and the consequent possible improvement in the flow of traffic through the Ebenezer-Belair Road intersection. This inference is buttressed by the fact that it was reasonable for the Council, armed with such an awareness, to conclude it to be in the public interest to prevent the intensification of the then existing congestion problem, at least until 1976 when another comprehensive rezoning, based on then current traffic studies, would be undertaken. In contrast, there is nothing in the record to support an inference that at the time of the comprehensive rezoning in 1971 the Council was unaware of the planned construction of Perry Hall Boulevard. Consequently, there is insufficient evidence to make fairly debatable the question of whether the Council erred in failing to consider the effect of the proposed construction of Perry Hall Boulevard.

Finally, the owners contend that the Council erred in failing to follow the recommendations of the Planning Staff and the Planning Board made prior to the comprehensive rezoning of 1971. Several expert witnesses testified that, in their opinions, the D.R.-16 classification assigned to former parcel "A" by the comprehensive rezoning of 1966 was correct; that the D.R.-16 classification recommended by the Planning Board and assigned to former parcel "B" by the grant of an individual map amendment in 1968 was correct; and that the recommendation of the Planning Staff and the Planning Board that former parcels "A" and "B" be retained in the D.R.-16 zone and former parcel "C" be placed in the D.R.-16 zone were correct. Consequently, they concluded that the Council erred by failing to follow such recommendations in assigning a D.R.-5.5 classification to the subject property.

The Court of Appeals and this Court have recognized that the recommendations of a planning body with respect to a comprehensive rezoning are not binding upon the legislative body. *Nottingham Village v. Balto. Co.*, 266 Md. 339, 354 (1972); *Miller, supra,* at 272; *Iverson, supra,* at 269. Moreover, the Planning Staff and the Planning Board recommendations for D.R.-16 zoning were made in the form of a map with no reasons articulated for the D.R.-16 classification proposed. Such recommendations, even though emanating from the Planning Staff and the Planning Board, are insufficient to make the issue of mistake or confiscation "fairly debatable." *Cf. Stratakis, supra,* at 656-57; *Heller v. Prince George's Co.*, 264 Md. 410, 418-19 (1972); *Habliston v. City of Salisbury,* 258 Md. 350, 361-62 (1970).

Under all of these circumstances the evidence before the Board that there was a mistake in the comprehensive rezoning or that the classification of the subject property in the D.R.-5.5 zone constituted a confiscatory action, was insufficient to make either of these issues fairly debatable. The judge below was not correct in affirming that portion of the Board's order which granted reclassification of the 20 ± acres, formerly comprising parcels "A" and "B", to the D.R.-16 zone. Accordingly, that portion of the order will be reversed.

The Board denied reclassification of former parcel "C" from the D.R.-5.5 zone to the D.R.-16 zone. In order for the requested reclassification to have been granted it was necessary for the owners, among other things, to establish by strong and convincing evidence, that the D.R.-5.5 classification assigned by the comprehensive rezoning of 1971 was erroneous. The evidence of error with respect to former parcel "C" was weaker than that presented with respect to former parcels "A" and "B". Whereas former parcels "A" and "B" had been zoned D.R.-16 before the adoption of the 1971 comprehensive rezoning, former parcel "C" had been classified in the D.R.-5.5 zone since 1966. Weaker evidence than that which we have found to be insufficient to make the question of error as to former parcels "A" and "B" fairly debatable, manifestly, is

insufficient to constitute the strong and convincing evidence of error required to be shown before a reclassification of former parcel "C" could be granted. On the basis of the evidence presented, the Board could not have properly granted the requested reclassification. Its decision to retain the 12 ± acres, formerly comprising parcel "C", in the D.R.-5.5 zone was correct and the judge below properly affirmed that portion of the Board's decision. Accordingly, that portion of the order will be affirmed.

> *Order affirmed in part and reversed in part.*
> *Case remanded for the entry of an order in accordance with this opinion.*
> *Costs to be paid by appellant owners.*