WILLIAM M. STUMP et al. *v.* THE GRAND
LODGE OF ANCIENT, FREE AND
ACCEPTED MASONS OF
MARYLAND et al.

[No. 787, September Term, 1979.]

*Decided April 11, 1980.*

The cause was argued before MOORE, LISS and WILNER, JJ.

*Susan Z. Whitman,* with whom were *Warren K. Rich* and
*Niles, Barton & Wilmer* on the brief, for appellants.

*J. Frederick Motz,* with whom were *John H. Hessey, IV, W. Lee Thomas* and *Michael J. McMahon, Assistant County Solicitor for Baltimore County,* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

This is an appeal by William M. Stump and other named individual taxpayers of Baltimore County, appellants, from the granting of a summary judgment in favor of The Grand Lodge of Ancient Free and Accepted Masons of Maryland (the Masons), Arthur M. Fisher, Inc., MAP Associates, and Baltimore County, Maryland, appellees.

Appellants initiated this case on March 1, 1979 by the filing of a declaration in which they alleged that the Baltimore County Council illegally designated a 405 acre tract of land located on the northeast quadrant of the intersection of Interstate Highway 83 and Shawan Road in Baltimore County (known as the "Bonnie Blink" tract and owned by the Masons) as a "town center" (CT District zoning).[1] This designation was designed to permit a mix of apartments and commercial uses in a commercially zoned tract. The Masons and the other named appellees in this case filed a demurrer to the declaration, a motion to transfer the case from law to equity, a motion for speedy proceedings, and a motion for summary judgment. Appellants noted opposition to the appellees' various motions and filed their own motion for summary judgment.

By order dated June 4, 1979, the trial court sustained the appellees' demurrer without leave to amend and held all other motions moot. On June 27, 1979, in response to a request by the non-public appellees for clarification of the court's prior order the trial judge entered an amended order granting summary judgment in favor of the appellees. On July 11, 1979, an appeal from the amended order was noted in this Court.

---

1. Suit involving the same tract and the same issues was filed by the Baltimore County Planning Association and the Valleys Planning Council. The trial judge ruled that these community associations lacked standing to bring suit. No issue was raised on appeal as to the propriety of this ruling, and we do not consider it in this case.

The facts of the case are not in dispute:

On March 5, 1973, the Masons, owners of the "Bonnie Blink" tract, entered into a contract of sale with Arthur M. Fisher, Inc. and MAP Associates as contract purchasers for that tract.[2]

In 1973, the tract was zoned MLR (Manufacturing, Light Restricted) and DR-1 (Residential Density). In 1975, the appellees requested that the property be changed to DR-5.5 and BM-CT (Business Major with a town center classification). That request was received by the Office of Planning and Zoning for Baltimore County which recommended the down-zoning of a portion of the tract to RC-4 (Rural Conservation Zone). That recommendation was adopted by the Baltimore County Planning Board, an advisory citizens' group. See Baltimore County Code Secs. 22-8 and 22-21 (1978).

On June 18, 1976, the appellees petitioned the Baltimore County Council, which was then beginning a series of public hearings on the adoption of the proposed 1976 comprehensive zoning maps to place a BM-CT zoning classification on the 101 acre portion of the "Bonnie Blink" tract then zoned as MLR.[3] On June 22, 1976, a public hearing was held on pending requests for zoning changes in the Third Councilmanic District, the location of the subject property. The appellees' request for rezoning was heard at that time.

---

**2.** MAP Associates has been actively engaged in the development of the "Bonnie Blink" tract as a proposed regional shopping center since the original sales contract was entered into by the parties. MAP Associates at one time assigned its contract interest to Arlen Realty, Inc. which later re-assigned its interest to MAP. MAP then assigned its contract rights to Shawan Associates, a partnership of which MAP was the general partner. As the identity of the contract purchaser varied from time to time during the course of these proceedings and as that status is not material to the issues raised by this appeal, we shall refer to the contract purchaser throughout as MAP Associates.

**3.** The "comprehensive map" for Baltimore County which is adopted by the County Council during the quadrennial comprehensive rezoning process is actually a series of comprehensive maps on a district by district basis. The comprehensive maps are adopted at the same time and by the same process and are usually referred to collectively as the County's comprehensive zoning map.

By letter dated September 27, 1976, the appellees suggested an alternative to the County Council — the rezoning of 83.6 acres of the subject property to BM-CT in order to accommodate the proposed shopping center. Subsequently, another public hearing was held by the County Council as to the proposed zoning map for the Third Councilmanic District.

On October 7, 1976, the Baltimore County Council passed seven bills adopting the 1976 official comprehensive zoning maps for Baltimore County. The zoning bill as to the Third Councilmanic District, which included the "Bonnie Blink" tract, was passed as Bill No. 110-76. The bill granted the zoning change requested by the appellees. County Executive Theodore G. Venetoulis, on October 18, 1976, vetoed Bill No. 110-76 noting "the placement of additional town centers in our county should not occur without a penetrating evaluation of their social and economic impact." On November 1, 1976, the County Council by unanimous vote overrode Mr. Venetoulis's veto.

The sole issue to be determined by this appeal is whether the Baltimore County Council acted illegally in placing a town center district zoning classification on the subject property when it adopted the 1976 comprehensive zoning map for the Third Councilmanic District?

Land areas in Baltimore County are divided into zones and districts, and its uses are regulated accordingly. Zones are intended to provide a broad regulation of the use of land, while districts are intended to provide for greater refinement in land use regulation for critical areas of development within the county. See Sec. 100.1 A and B of the Baltimore County Zoning Regulations. Districts, therefore, as identified in Sec. 100.1 B 2, are superimposed upon zones.

In 1967, the County Council passed Bill No. 40 which authorized the Baltimore County Planning Board to designate town centers pursuant to criteria or guidelines which the Planning Board was required to publish. On June 13, 1967, the Planning Board adopted the criteria for town centers which were then attached to the Baltimore County Zoning Regulations as Appendix G.

The CT District was described in Sec. 259.2 D of the Zoning Regulations as follows:

> CT Districts may be applied only to primary shopping areas within town centers on land zoned BL, BM, BR and/or ML, the primary shopping area of any such center being that area which: contains or is intended to contain a high incidence of pedestrian-oriented uses of the type ordinarily producing relatively high income and profit per square foot of sales area; includes or is intended to include major business generators (such as department stores); and also includes or is intended to include certain auxiliary services (such as offices) typically not occupying ground-floor frontage. Certain planned shopping centers having such characteristics may lie wholly or partially within CT districts.

The definition of a CT District requires that such districts be within "town centers."

The Planning Board also adopted the following criteria from Sec. 3 of Bill No. 40 for the establishment of "town center":

> A locality designated and delimited as a town center by the Planning Board to serve as the primary center for commercial (including supporting commercial) and higher-density residential development for an area having a population of approximately 100,000 or more persons, and meeting criterial or guidelines adopted and published by the Planning Board. Industrial, lower density, residential, and institutional uses are not excluded from town centers (when allowed under the regulations for the zones in which they are located).

Appellants point out that when the 1976 comprehensive plan was adopted by the County Council which granted CT districting to this property, there were in existence seven

town centers previously designated by the Planning Board. The Town Center and Town Center Distributor By-Pass Map adopted with Appendix G by the Planning Board in 1967 indicates that the Towson Town Center service area extends to within a half mile of the "Bonnie Blink" property. Appendix G "designation criteria" No. 3 requires that each town center possess an existing or potential major market area with a projected population of approximately 100,000 persons or more within its designation. The criteria further prohibit "market service areas" to serve as a basis for more than one town center. It is conceded that the subject property cannot meet the criteria area unless the Towson market area is included in the calculation. It is to be noted that the Baltimore County Council has never adopted or approved the criteria promulgated by the Planning Board.

Appellants contend that the County Council acted illegally, when, in adopting Bill No. 110-76 as the comprehensive zoning map for the Third Councilmanic District, it placed a CT District upon a portion of the "Bonnie Blink" property without the County Planning Board[4] having previously designated the area in which the subject property was located as a "town center." This argument is predicated on the appellants' interpretation of Secs. 101 and 259.2 D of the Baltimore County Zoning Regulations which they urge prohibit the County Council from applying CT Districts to properties not located in an area which has been designated as a "town center" by the Planning Board.

We do not agree with appellants' reading of the effect of these sections. The Court of Appeals, in *Fuller v. County Commissioners*, 214 Md. 168, 172-73, 133 A.2d 397 (1957), stated the Court's function in reviewing comprehensive rezoning legislation as follows:

> In adopting the new zoning map for the entire Eighth District, the County Commissioners were acting in a legislative capacity. The Court's function to review such action is restricted and its

---

4. The Planning Board is a group composed of twelve citizens and four County officers, the latter being non-voting members. See Baltimore County Code, Sec. 22-3 (1978).

scope is narrow. The legislative exercise of the police power is presumed to be valid and a successful attack upon it must show affirmatively and clearly that it is arbitrary, capricious, discriminatory or illegal.

Zoning decisions which are made during a comprehensive rezoning process are strongly presumed to be correct. *See Heller v. Prince George's County,* 264 Md. 410, 412, 286 A.2d 772 (1972); *Iverson v. Zoning Bd.,* 22 Md. App. 265, 267-68, 322 A.2d 569 (1974). The reason for this strong presumption is that when engaged in comprehensive rezoning, the County Council is not considering individual properties on an isolated or piecemeal basis, but rather, it is considering the overall needs and development of the County as a whole. *See McBee v. Baltimore County,* 221 Md. 312, 316-17, 157 A.2d 258 (1960); *Grooms v. LaVale Zoning Board,* 27 Md. App. 266, 279, 340 A.2d 385 (1975).

Comprehensive rezoning is a vital legislative function, and in making zoning decisions during the comprehensive rezoning process, a County Council is exercising what has been described as its "plenary" legislative power. The power is broad and is limited only by the constitutional restriction that the Council's action "bears a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare. . . ." *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 66, 254 A.2d 700 (1969); *Coppolino v. County Board of Appeals,* 23 Md. App. 358, 370, 328 A.2d 55 (1974).

We conclude that Secs. 101 and 259.2 of the Zoning Regulations for Baltimore County do not deprive the County Council of the plenary power which it exercises during the comprehensive zoning process. At the most, these sections provide interpretative guidance to the Planning Board, the Zoning Commissioner and property owners who might seek interim zoning reclassification of their properties pursuant to Secs. 22-24 of the Baltimore County Code (1978).

If we were to adopt appellants' contention in this case that the Planning Board was vested by the Baltimore County Council with certain powers regarding the establishment of

"town centers" that are not only recommendatory in nature but also preliminary prerequisites to the establishment of such "town centers" then it seems clear to us such a zoning procedure would amount to an illegal delegation of the County Council's legislative powers to the citizens' advisory board. This is particularly so since Secs. 101 and 259.2 D, which were adopted by the County Council contain no standards governing the determination by the Planning Board as to which areas may be designated as "town centers." [5] See Prince George's County v. McBride, 268 Md. 522, 527-30, 302 A.2d 620 (1973). We conclude that these sections do not limit the plenary power of the County Council to zone property throughout the County on a comprehensive basis. The Planning Board has no veto powers in the zoning process. This is clear from Sec. 22-8 of the Baltimore County Code (1978) which specifically provides that the Planning Board has an "advisory role" in the zoning process. Such a role does not sustain appellants' position that Secs. 101 and 259.2 D place with the Planning Board the final power to determine what areas may be zoned "town centers." See Nottingham Village, Inc. v. Baltimore County, 266 Md. 339, 354, 292 A.2d 680 (1972); Miller v. Abrahams, 239 Md. 263, 272, 211 A.2d 309 (1965).

While the wisdom of the County Council's comprehensive rezoning in the Third Councilmanic District and the adoption of the CT District as being applicable to the subject property may be arguable, the Council made its decision after full and open hearings held in accordance with the applicable law and in the exercise of its plenary power. We do not find that the County Council's action was arbitrary, capricious, discriminatory or illegal. Nor do we find that the trial judge was clearly erroneous in granting summary judgment in favor of the appellees.

*Judgment affirmed, costs to be paid by appellants.*

---

5. Appellants rely upon Appendix G to the Baltimore County Zoning Regulations which includes a statement of the criteria promulgated by the Planning Board as a guide for determining whether to designate specific areas as "town centers." These criteria have never been adopted by the County Council but were apparently intended to be used for the guidance of the Planning Board in reaching its recommendations.