## HEDIN *v.* BOARD OF COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY

[No. 79, October Term, 1955.]

*Decided February 27, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Harry E. Taylor, Jr.,* for appellant.

*William L. Kahler,* with whom was *Robert B. Mathias* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

John D. Hedin, the appellant, submitted to the Board of County Commissioners of Prince George's County a petition for the rezoning of a tract of about 4¾ acres of land owned by him from a classification of "R-55", which is for single family detached dwellings, to a classification of "R-18", which is for low density apartment use. The Board of County Commissioners (hereinafter usually referred to as the "Board") was acting in this matter in its capacity as the District Council for that portion of the Maryland-Washington Regional District which lies in Prince George's County. (See Code (1951), Article 66B, Section 35; Code of Public Local Laws of Prince George's County (1953), Section 1117; Acts of 1953, Chapter 622, Section 2.) The Board denied the petition for reclassification of the property, and the appellant filed a bill of complaint against the Board seeking relief in equity on the ground that the action of the Board was unreasonable, capricious and arbitrary. The Circuit Court for Prince George's County sustained the Board's demurrer, without leave to the complainant to amend his bill. The appeal is from that order.

The petition for reclassification was originally filed with The Maryland-National Capital Park and Planning Commission (hereinafter referred to as the "Planning Commission"). After investigation, the Technical

Staff of the Planning Commission recommended approval and the Planning Commission approved the Staff recommendation and in turn recommended to the Board that the petition be approved.

Most of the essential facts in the case are set forth in the report of the Technical Staff. It states the requested change from a one-family, detached, residential zone (R-55), and recites that the Zoning Plan proposes the property in question for continuance in the R-55 Zone. It described the property as trapezoid in shape, containing 4.76 acres, fronting 429.20 feet on the northerly side of Queen's Chapel Road, having an average depth of 535 feet, and being, at its southwesterly corner, approximately 750 feet northeast of Russell Avenue.

A plat was filed as an exhibit with the bill. It purports to have been prepared from an official record of the Commission and it was presumably before the Board. A copy of it is appended to the appellee's brief. It shows the location of the property as being near the intersection of Queen's Chapel Road and Chillum Road. Notations on the plat show a total of ten reclassifications of property between November, 1940 and October, 1952. One of these, made in 1947, reclassified property adjoining the appellant's land on its northerly side for apartment house use. Most of the reclassifications shown were from residential to commercial use.

The two following paragraphs are taken from the report of the Technical Staff of the Commission:

"*Results of Field Inspection:* The Subject property is vacant and is bounded on its westerly side by a tract of land owned by the Marist Brothers (a Catholic Order). The parcel is bounded on its northerly side by a large, vacant tract of land reclassified to the apartment house zone under Petition No. 1016. With the exception of a few one-family dwellings on 29th Avenue and on Queens Chapel Road, the adjoining property to the north is undeveloped up to a commercial area centered at Chillum and Queens

Chapel Roads. Across Queens Chapel Road to the south is the Queens Chapel Gardens apartment development. Between these apartments and the District of Columbia line on the southerly side of Queens Chapel Road is the one family subdivision of North Woodridge. The Avondale subdivision begins at a point approximately 560 feet south of the subject property and runs to the District of Columbia line.

*Comments:* The Zoning Plan adopted by the Commission proposes that the subject property remain in the R-55 Zone. However, sufficient change has taken place in the area to justify the reconsideration of that proposal. Queens Chapel Road has been widened to a dual lane, divided highway, and extensive commercial development has taken place near the intersection of Chillum and Queens Chapel Roads. The land uses in the areas adjacent to Queens Chapel Road break very sharply from one-family subdivision type development to multiple family use at 25th Avenue. On the southeasterly side of Queens Chapel Road north of 25th Avenue are the Queens Chapel Garden apartments, the Mount Rainier Junior School, the Queenstown apartments and shopping center. On the opposite side of Queens Chapel Road are the subject property, scattered dwellings, vacant land and the new Queens Chapel Shopping Center. South [Southwest?] of 25th Avenue on both sides of Queens Chapel Road to the District of Columbia line are the one family subdivisions of North Woodridge and Avondale. The staff, therefore, feels that it is appropriate to recommend approval of this petition based upon the changes that have taken place during the past several years and upon the existing and potential land use of adjacent properties."

The record of the hearing before the Board, which was also filed as an exhibit with the bill, shows that counsel for the applicant showed some airplane photographs of the neighborhood, and that a representative of the Planning Commission showed the location of the tract on the map (presumably the same as that from which the plat was made), and he stated the facts as contained in the Staff report above referred to. Two protestants appeared and spoke: (1) a Mr. Donnelly, who said he represented the Avondale Citizens Association, and who lived a half-mile from the tract in question; and (2) a Mr. Pfluger, who said that he lived at 4600 - 21st Street, Woodbridge, and had lived there for sixty-two years. The record does not show that Mr. Pfluger professed to represent anyone other than himself. Mr. Donnelly asserted that rezoning the appellant's land would in effect rezone the adjacent land. He also asserted, without giving any reported reasons for his view, and without (so far as the record discloses) showing any qualifications as a real estate expert, that the land could be developed into eight or nine very excellent homes. Mr. Pfluger, whose qualifications as a real estate expert or zoning authority were not shown either, stated that he did not agree with the Planning Commission, and said that the granting of the application would be "spot zoning."

One neighbor, who lived at 2302 Queen's Chapel Road, stated that she did not think that the proposed change would depreciate the value of her property.

Mr. Hedin, the applicant, was the only other witness. He is a builder. He said that he lived on Queen's Chapel Road, but did not give the number or otherwise identify the location of his home. He said that he had bought the property in question about ten years before the hearing and that there were no apartments across the street at that time. He further testified that it was not practicable to use his property for anything other than apartments. He was then asked by his counsel whether it would be possible to put, say, eight or nine houses on that property. He answered, "No it would not." Mr. Donnelly then asked

him how many houses could be put there, and Mr. Hedin answered, "Probably about five."

That was the end of the testimony. One of the Commissioners then said: "Mr. Chairman, I am rather familiar with this property. In my opinion I think it would be detrimental and it would be bad zoning to grant this R-18 zoning. Therefore, I move that Petition No. A-2450 for rezoning from R-55 to R-18 be denied." The record before the Board contains just one more sentence which states that the motion was seconded by another Commissioner "and duly passed."

There are a number of allegations in the bill, which do not appear to have been before the Board, and which relate largely to controversies between the appellant on the one hand and the Avondale Citizens Association and its predecessor and Mr. Pfluger on the other. Mr. Pfluger had been president of the predecessor association some years ago. There are also included in the appendix to the appellant's brief copies of letters from various neighbors favorable to the appellant's desires. So far as we can discover, not one of these so called "approvals of property owners" was before either the Board or the Circuit Court; and all of those which are dated bear dates subsequent to the Board hearing and to the filing of the bill. They have no proper place in the appendix, and of course cannot be considered. Allegations of other matters extraneous to the hearing before the Board likewise cannot be taken into consideration in this case in ruling upon the validity of the action of the Board.

The question before us is the correctness of the ruling of the Circuit Court on the defendant's demurrer; and that in turn, depends—as the case has been presented to us—upon whether or not the action of the Board was arbitrary, unreasonable or capricious.

The opinions expressed by Messrs. Donnelly and Pfluger, as reported in the record of proceedings before the Board are, we think, very weak as supports for the conclusion of the Board. Indeed, Mr. Pfluger's characterization of the proposed change as "spot zoning" seems

unsupportable on the facts with regard to the zoning of other property in the immediate vicinity. "Spot zoning" is described by Judge Delaplaine in writing the unanimous opinion of this Court in *Cassel v. City of Baltimore,* 195 Md. 348, at 355, 73 A. 2d 486, at 488, as "the arbitrary and unreasonable devotion of a small area within a zoning district to a use which is inconsistent with the use to which the rest of the district is restricted." As was said in *Offutt v. Board of Zoning Appeals,* 204 Md. 551, at 561, 105 A. 2d 219, at 223, "A reclassification can be considered as 'spot zoning' only when it fails to bear a substantial relationship to the public health, safety, morals and general welfare, and is out of harmony and in conflict with the comprehensive zoning ordinance." Where the proposed change is, as here, from one residential use to another, and there is already a considerable amount of property either adjoining the subject property or in its immediate vicinity falling within the proposed classification and there is also a considerable amount of other property close by of a lower classification, the proposed reclassification is not "spot zoning."

Mr. Donnelly's assertion or argument that rezoning the appellant's land would rezone adjacent land is substantially a restatement of the familiar claim for the maintenance of a buffer zone at the expense of one landowner for the benefit of the owners of other land. The buffer zone argument has been rejected by this Court. *Northwest Merchants Terminal v. O'Rourke,* 191 Md. 171, 60 A. 2d 743; *Hoffman v. City of Baltimore,* 197 Md. 294, 79 A. 2d 367. Zoning is not static. *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 105 A. 2d 219.

Mr. Donnelly's other testimony was a bare assertion that eight or nine houses could be built on the subject property. It seems of little probative value. The most damaging evidence before the Board, from the standpoint of the appellant, was his own—that about five houses could be built on the property. However, this cannot be set apart and considered without regard to his immediately preceding statement that it was not practicable to

use the property for anything but apartments. The Staff report of the Planning Commission strongly supported his petition.

The general rule governing our courts in reviewing the actions of zoning boards has been established by many cases, and is thus stated in *Offutt v. Board of Zoning Appeals,* 204 Md. 551, at 562, 105 A. 2d 219, at 224:

"We cannot disregard the general rule that in an appeal from a decision of a zoning board, the court will not substitute its own judgment as to the wisdom or soundness of action taken by the board, but will decide only whether or not such action was arbitrary or discriminatory and illegal. It is not the function of the court either to zone or to rezone, but only to decide whether the board properly applied the applicable law to the facts. The court should not substitute its own judgment for the judgment of the board if the question decided is fairly debatable. If there is room for reasonable debate as to whether the facts justified the board in deciding the need for its action, the decision must be upheld. It is only where there is no room for reasonable debate, or where the record is devoid of supporting facts, that the court is justified in declaring the legislative action of the board arbitrary or discriminatory."

The principal objection to the action of the Board in this case is that it appears to have been based upon the personal impression of one of the members, who arrived at his decision on his own familiarity with the neighborhood, rather than on the evidence adduced at the hearing. The specific rule governing this kind of situation is also well established—that "in reviewing the action of a zoning board, the court does not review the personal opinions of its members, and so the question whether the action of the board was arbitrary must be determined from the facts from which the board drew its conclusion, not from the conclusion itself." *Oursler v. Board of Zoning Appeals,* 204 Md. 397, at 404, 104 A. 2d 568, at 571. See also *American Oil Co. v. Miller,* 204 Md. 32,

102 A. 2d 727, and *Zang & Sons, Builders, Inc. v. Taylor*, 203 Md. 628, 102 A. 2d 723, both cited in the *Oursler Case*.

Two other recent cases dealing with such questions are *Wakefield v. Kraft*, 202 Md. 136, 96 A. 2d 27, in which the majority opinion was written by Judge Hammond, and a vigorous dissenting opinion on behalf of himself and Judge Collins was written by Chief Judge Sobeloff, and *Temmink v. Board of Zoning Appeals*, 205 Md. 489, 109 A. 2d 85.

The *Wakefield Case* grew out of an effort to have one corner of an intersection of two roads near Ellicott City, in Howard County, rezoned from residential to commercial, so that it might be used by an automobile dealer. The majority of the Court took the view that the evidence showed that the question was not whether to rezone only the one corner, but whether to rezone the entire intersection. There was testimony to show that the whole intersection would have been zoned as commercial initially, but for the fact that the exact location of one of the roads, which was to be extended, was not definitely known at the time of the original zoning. There was also expert testimony in support of the rezoning of the entire intersection so as to permit the establishment of a shopping center to serve the area. The Zoning Commissioner recommended against the change on a balancing of the equities. The County Commissioners approved the reclassification. The majority opinion stated in part, "The zoning expert, Mr. Brooks, says that the pendulum must swing to commercial A and that he would recommend that classification because of the need for a business center in that community. There is lay testimony to support this, based on reasons stated. There is the familiarity of the County Commissioners with the County and the neighborhood. Certainly, on the evidence before them, and the facts known to them, the County Commissioners as a legislative body could honestly, soundly, and fairly conclude that the public need required the amendment to the zoning map. They recalled, undoubtedly, that it would have been done in 1948, if the relocation of the road then

had been known. Thus, essentially, making the intersection Commercial A was part of an original comprehensive plan for uniform zoning of the whole County."

This language does not sanction zoning on the basis of the mere personal or private knowledge of the members of a zoning board. It emphasizes the evidence before them as well as their familiarity with the County and the neighborhood.

A situation somewhat similar to that in the *Wakefield Case* existed in the *Oursler Case, supra*. There the members of the Board of Zoning Appeals inspected the premises and made measurements to determine whether a traffic hazard would be created if the application to establish a restaurant at a particular location was granted. There this Court was careful to say:

"It is not necessary in this case to determine the extent to which the Board's findings from personal observations and measurements might be taken as outweighing the sworn testimony of witnesses subject to cross-examination, as the protestants challenged only the Board's conclusion and did not challenge the right of the Board to consider findings from personal observations and measurements, spread upon the record under the circumstances of this case."

In the *Temmink Case,* a Board of Zoning Appeals based its action in large measure upon a report from the Planning Commission, which had not been produced at the hearing. The protestants had had no opportunity to examine the report or to cross-examine its author with regard thereto. Under the statute applicable to that case, this Court reversed the order of the Circuit Court and remanded the case so that the Circuit Court could remand the matter to the Board of Zoning Appeals for the introduction of the report in evidence and for the production of further evidence and the exercise of the right of cross-examination. This Court said (at 205 Md. 497, 109 A. 2d 89): "It must be kept in mind that the personal knowledge of the members of the Board, or of some other officials upon whom they rely cannot be considered as

evidence as to a change in conditions in a neighborhood or a need for reclassification."

We think that there was not sufficient evidence to warrant the conclusion of the Board in the instant case, and that the Board's action in basing its decision apparently almost entirely upon the personal opinion of one of its members, without support for that opinion in the evidence, amounted to arbitrary action on the part of the Board, from which some form of relief may be had in equity. Hence the decree of the Circuit Court will be reversed and the case remanded.

As the case was presented both in the briefs and in the oral argument in this Court, no emphasis was placed upon the specific type of relief sought by the bill. That was a mandatory injunction to compel the reclassification of the property. In addition, there was the usual prayer for other and further relief. Since the question of the appropriate form of relief has not been fully argued and considered, we shall not undertake to pass upon it and do not express any opinion thereon.

The appellant contends that a representative or representatives of a civic association should not have been heard before the Board. It may well be that such an association does not have sufficient interest to entitle it to become a party to proceedings to review the action of a zoning board. *Norwood Heights Improvement Association v. City of Baltimore,* 195 Md. 368, 73 A. 2d 529; *Windsor Hills Improvement Association v. City of Baltimore,* 195 Md. 383, 73 A. 2d 531. We are certainly not willing, however, to take the position that their representatives may not so much as be heard by a zoning board in proceedings affecting the neighborhood in which their members reside or conduct their businesses. In this case it may also be noted that the appellant did not even object at the hearing to the representative of such an association presenting his views.

In accordance with the foregoing views, the decree of the Circuit Court will be reversed and the case remanded for further proceedings not inconsistent with this opinion,

including the granting of leave to amend the bill, if desired, with regard to the relief sought.

*Decree reversed, with costs, and case remanded for further proceedings.*