MONTGOMERY COUNTY, MARYLAND *v.*
FREDERICK L. HORMAN,
JR. ET AL.

[No. 1648, September Term, 1979.]

*Decided September 8, 1980.*

The cause was argued before THOMPSON, J., and M. ALBERT
FIGINSKI, Associate Judge of the Eighth Judicial Circuit and
STANLEY KLAVAN, Associate Judge of the District Court of
Maryland for District 6, specially assigned.

*Henry C. Clarke, Jr., Assistant County Attorney for*

*Montgomery County,* with whom were *Paul A. McGuckian, County Attorney for Montgomery County,* and *Robert G. Tobin, Jr., Deputy County Attorney for Montgomery County,* on the brief, for appellant.

*Harry W. Lerch,* with whom were *Robert G. Brewer, Jr.,* and *Lerch, Early & Roseman, Chartered* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Montgomery County, the appellant, appeals from a judgment of the Circuit Court for Montgomery County reversing the zoning action by the County Council of Montgomery County (Council) insofar as it involved land of the appellees, Frederick L. Horman, Jr. and Russell Coleman, Trustee, appellees. The trial judge made findings of fact which we accept and with moderate editing adopt as our own.

Appellees purchased approximately 124 acres of land northwest of the town of Boyds, Maryland, in 1966. The property is bounded on the west by the Chessie System railroad tracks and on the south by Bucklodge Road. When the appellees purchased the property, 89 acres were zoned as I-1, and 35 acres were zoned R-R (now the R-200 zone; 1/2 acre residential). The industrially zoned portion had been so classified by the Council by local zoning map amendments in 1958 and 1963.

In 1973, the Montgomery County Planning Board (Board) and the Council proposed the Rural Zone Sectional Map Amendments. The studies preceding this action identified in detail certain areas to be downzoned, while recommending that other property be retained in existing zoning categories because of attributes such as proximity to railroad tracks and access to existing commercial areas. The planners recommended retention of the I-1 zoning of appellees' 89 acres of I-1 zoned property in accordance with this policy. On August 20, 1974, the Council effectuated the Rural Zone Map Amendments in Resolution 7-1909, thereby retaining the I-1 status of 89 acres of appellees' land. The Maryland

Court of Special Appeals affirmed Resolution 7-1909 in an unreported decision, *W.C. & A.N. Miller Development Co. v. Montgomery County, Maryland* (No. 1107, Sept. Term, 1977, filed August 8, 1978).

In 1976, while the appeals of the Rural Zone Sectional Map were still pending, the Board began work on a new master plan for the Boyds area. As required by *Md. Code,* Art. 66D, § 7-108 (1957), the boundaries of the Boyds Master Plan were described with particularity. These boundaries indicate that the Boyds Master Plan includes 99.6 acres of the appellees' land, but excludes 24.4 acres of appellees' I-1 zoned land. On December 2, 1977, a "Final Draft" of the Boyds Master Plan was released and submitted to the Council. The boundary continued to exclude approximately 24.4 acres of appellees' property. In this version of the Boyds Master Plan, the Board recommended retention of the I-1 zoning of the 89 acres of appellees' property, with the suggestion that further comment on the retention of I-1 zoning be pursued at the public hearing on the final draft plan. In another "Final Draft" of the Boyds Master Plan, dated March 31, 1978, the proposals of the earlier (December 2) draft were substantially revised to recommend that the amount of I-1 zoned land on appellees' site be reduced to 50-75 acres. Public hearings were held prior to both drafts. On April 6, 1978, the Board accepted the revised language proposing downzoning to 50-75 acres of I-1 land. However, upon presentation of the final "Final Draft" of the plan to the Council on April 11, 1978, the Council further reduced the I-1 acreage on appellees' land from 50-75 to 10-35. On May 9, 1978, the Council approved this final form of the Boyds Master Plan, recommending that the 89 acres of appellees' I-1 zoned land be reduced to 10-35 acres.

On May 22, 1978, the Board transmitted rezoning application number G-119, known as the Boyds Sectional Map Amendment, to the Council. This rezoning application requested, *inter alia,* the downzoning of approximately 69 acres of appellees' property from the I-1 zone to the rural zone, reducing appellees' I-1 zoned property from 89 acres to 20 acres. Included within the downzoning requested in the application G-119 were 24.4 acres of appellees' I-1 zoned land

which lay outside the boundaries of the Boyds Master Plan. The Technical Staff of the Montgomery County Planning Board, in a report dated June 26, 1978, recommended approval of the Boyds Sectional Map Amendment. The rationale offered in this report, based upon projected traffic levels in the area was as follows: "While the theoretical capacity of the local roads may be higher, it is the opinion of the staff that the traffic levels recommended here are consistent with the rural nature of the Boyds area." On July 12, 1978, at a public hearing held by the Board, concerns related to industry-generated traffic and its impact on safety were voiced by the president and vice president of the Boyd Civic Association and by individual citizens. On October 10, 1978, the Council, sitting as the District Council for that portion of the Maryland-Washington Regional District located in Montgomery County, by Resolution 8-2217 (as amended on October 31, 1978) granted application G-119 for a sectional map amendment reclassifying 1019.56 acres including 89 acres of appellees' property, 24.4 of which lay outside the designated boundaries of the Boyds Master Plan. As stated in the Resolution, the Council's decision to downzone 69 of the 89 acres of appellees' I-1 zoned land was based upon the concerns with respect to traffic conditions and their effect on rural character of the Boyds area voiced at the public hearing and in the Board's technical staff report.

The trial judge quite properly found the zoning involved here was comprehensive rezoning but fell into error because he applied standards of review applicable to other types of rezoning and not applicable to comprehensive rezoning.[1]

The Court of Appeals has set forth the function of Maryland courts in reviewing comprehensive rezoning legislation in *Ark Readi-Mix Concrete Corp. v. Smith,* 251 Md. 1, 4, 246 A.2d 220, 221-22 (1968) as follows:

"Zoning is a legislative function, and when

---

1. The cases relied on by the trial judge, Dundalk Holding Co. v. Horn, 266 Md. 280, 292 A.2d 77 (1972) (which involved a special exception) and Hedin v. Board of County Commissioners, 209 Md. 224, 233, 120 A.2d 663, 667 (1956) and Offutt v. Board of Zoning Appeals, 204 Md. 551, 562, 105 A.2d 219, 224 (1954) (both of the latter cases involve piecemeal rezoning) are not comprehensive rezoning cases.

reviewing the acts of zoning authorities, the duty of the courts is to decide whether such action was arbitrary, discriminatory or illegal [citations omitted] .... When a comprehensive map designed to cover a substantial area is adopted, it is entitled to the same presumption of correctness as an original zoning [citations omitted]. Thus, persons attacking the correctness of the map's classifications have a heavy burden of overcoming the presumption of their validity. This burden is heavier in the case of comprehensive zoning than in the case of a piecemeal reclassification [citations omitted]."

As this Court said in *Stump v. The Grand Lodge of Ancient, Free and Accepted Masons of Maryland,* 45 Md. App. 263, 269, 412 A.2d 1305 (1980):

"Zoning decisions which are made during a comprehensive rezoning process are strongly presumed to be correct. *See Heller v. Prince George's County,* 264 Md. 410, 412, 286 A.2d 772 (1972); *Iverson v. Zoning Bd.,* 22 Md. App. 265, 267-68, 322 A.2d 569 (1974). The reason for this strong presumption is that when engaged in comprehensive rezoning, the County Council is not considering individual properties on an isolated or piecemeal basis, but rather, it is considering the overall needs and development of the County as a whole. *See McBee v. Baltimore County,* 221 Md. 312, 316-17, 157 A.2d 258 (1960); *Grooms v. LaVale Zoning Board,* 27 Md. App. 266, 279, 340 A.2d 385 (1975).

"Comprehensive rezoning is a vital legislative function, and in making zoning decisions during the comprehensive rezoning process, a County Council is exercising what has been described as its 'plenary' legislative power. The power is broad and is limited only by the constitutional restriction that the Council's action 'bears a substantial relationship to the public health, comfort, order,

safety, convenience, morals and general welfare. . . .' *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 66, 254 A.2d 700 (1969); *Coppolino v. County Board of Appeals,* 23 Md. App. 358, 370, 328 A.2d 55 (1974)."

It is apparent to us that the appellees did not meet the heavy burden on them to show that the Council's actions did not bear a substantial relationship to public health, comfort, order, safety, convenience, morals or general welfare. We will, however, briefly answer the appellees' arguments.

Appellees make the argument that there is no evidence to show a substantial relationship of the rezoning to the public health, comfort, order, safety, convenience, morals and general welfare. Once again, reliance upon piecemeal zoning cases such as *County Commissioners of Anne Arundel County v. Fairwinds Beach Club, Inc.,* 230 Md. 569, 187 A.2d 845 (1963) is misplaced. The burden is upon the property owner to show that there is no substantial basis for the decision. *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 67, 254 A.2d 700 (1969).

Appellees next argue that the downzoning of the property constituted an impermissible "change of mind" by the appellant. In support of their argument, they cite *Schultze v. Montgomery Co. Planning Board,* 230 Md. 76, 185 A.2d 502 (1962) and *Kay Construction Co. v. County Council for Montgomery County,* 227 Md. 479, 177 A.2d 694 (1962) which involved piecemeal zoning, and *Lambert v. Seabold,* 246 Md. 562, 229 A.2d 116 (1967) and *Polinger v. Briefs,* 244 Md. 538, 224 A.2d 460 (1966) which involve the "change-mistake" rule.

Appellees next argue that the Council's action in downzoning the property was arbitrary and capricious because of the absence of change. In making this argument, they concede under *Coppolino v. County Board of Appeals,* 23 Md. App. 358, 328 A.2d 55 (1974) the "change-mistake" rule does not apply to the comprehensive rezoning yet say that some change is necessary to prevent a rezoning from being arbitrary and capricious. In that case [23 Md. App. at

370], we specifically held "that the absence of a showing of either change or mistake prior to a comprehensive rezoning does not constitute error." The appellees have misconstrued our holding in *Coppolino.* There was substantial evidence to support the Boyds Sectional Map Amendment as a whole. It was neither arbitrary nor capricious for the Council to conclude that the preservation of the rural and residential character of Boyds was a desirable end.

Appellees assert that the zoning action was arbitrary because it was based upon a plebiscite of the neighborhood citing the various "decisions to revise a number of acres of land there was to be permitted on the appellees' property." In comprehensive rezoning it is proper for the zoning authority to consider the opinions of the citizens. So long as there is any rational basis for legislative action, that action will be upheld by the courts. As we have stated it was reasonable for the Council to conclude that the desirability of preserving the rural and residential character of Boyds required the zoning changes.

Appellees further contend that the rezoning of the 24.4 acres of the land outside of the Boyds area was improper. They concede that under *Chapman v. Montgomery County Council,* 259 Md. 641, 271 A.2d 156 (1970), a Master Plan is only a guide for further development and has no mandatory legal effect. They, nevertheless, argue the plan does not support a legislative action outside the boundaries of the plan based upon recommendations contained within the plan. We agree. The Council's reliance upon *Montgomery County v. Woodward and Lothrop, Inc.,* 280 Md. 686, 703-04, 376 A.2d 483 (1977), *cert. denied, sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S. Ct. 1245, 55 L. Ed. 2d 769 (1978) is misplaced. In that case the rezoned area was a small area within the Master Plan area.

Finally, relying upon *Mayor and City Council v. Mano Swartz, Inc.,* 268 Md. 79, 299 A.2d 828 (1973), appellees argue that an ordinance based solely upon aesthetic considerations is invalid. They allege that the Council's sole ground for the downzoning was aesthetic because it was based upon preserving the rural character of Boyds. It seems

to us that the function of zoning is to preserve various types of neighborhoods, be they residential, industrial, commercial or historical, and it was quite a legitimate consideration for the Council's zoning to preserve the rural character of the Boyds community. *See, Mano Swartz, supra,* 268 Md. at 92, 299 A.2d at 835, *Norbeck Village, supra,* 254 Md. at 65-66, 254 A.2d at 704, *County Commissioners v. Miles,* 246 Md. 355, 365, 228 A.2d 450, 455 (1967).

*Judgment affirmed in part, reversed in part.*
*Case remanded for passage of order in conformity with this opinion.*
*Costs to be equally divided.*