# JMC CONSTRUCTION CORPORATION, INC. ET AL. V. MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 721, September Term, 1982.]

*Decided March 2, 1983.*

The cause was argued before MOYLAN and BISHOP, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*Barbara A. Sears* and *Susan M. Reutershan,* with whom were *Joseph P. Blocher* and *Linowes & Blocher* on the brief, for appellants.

*Bruce P. Sherman, Assistant County Attorney for Montgomery County,* with whom were *Paul A. McGuckian, County Attorney for Montgomery County,* and *Robert G. Tobin, Jr., Deputy County Attorney for Montgomery County,* on the brief, for appellee Montgomery County, Maryland. *Roger W. Titus,* with whom were *Titus & Glasgow* on the brief, for appellees West Montgomery County Citizens Association et al.

BISHOP, J., delivered the opinion of the Court.

JMC Construction Corporation, Inc., and Berger/Berman Builders, Inc., appeal from an Order of the Circuit Court for Montgomery County affirming a zoning decision made by the Montgomery County Council under Article 66D, Annotated Code óf Maryland.

## I.

### Background

Article 66D, entitled Maryland-National Capital Park and Planning Commission (the Commission) and referred to as the Regional District Act, is basically the legislative authority for regional cooperation in land use among certain counties.

It authorizes the Commission to initiate and adopt both general and local master plans proposing zoning changes in Montgomery and Prince George's Counties. It also authorizes the county councils of the two counties (which are designated as District Councils for the Maryland-Washington Regional District) to adopt and amend zoning ordinances.

The Commission is composed of ten members, five from Montgomery County and five from Prince George's County. Article 66D, section 2-101. In practice the five members from each county constitute the planning board of that county. For an area of land lying in only one county, the five members from that county, constituting that county's planning board, and the county council of that county, constituting the district council, decide the content and disposition of the master plan. Montgomery County Code, Section 33A-7. The adoption of the zoning recommendations contained in the plan as the law of the county is the exclusive prerogative of the Montgomery County District Council. Montgomery County Code Chapter 59.

Appellants essentially contend that the Montgomery County District Council approved a Commission master plan, then decided, without evidential justification, not to follow the approved master plan recommendation to rezone appellants' property from two-acre lots to one-half acre lots.

The following sub-sections of Article 66D describe the allocation of planning and zoning authority. With respect to planning authority, section 7-108, Regional District Plans and Amendments, provides:

4

(i) That the Commission shall initiate and adopt, and the district council shall approve and from time to time amend a map showing the entire area of that county within the regional district, divided into local planning areas.[1]

---

**1.** Appellees, West Montgomery County Citizens Association (West Montgomery) et al, argue that:

> "One of the major planning functions established under the Regional District Act is the adoption of general and local master plans. The *adoption* of such plans is a responsibility delegated to the *Commission,* which may act following the approval by the District Council for the affected area. Article 66D, § 7-108." (emphasis added).

Section 7-108 (b), entitled "Local planning areas and local master plans" sub-section (i) provided, *inter alia,* "that the Commission shall initiate, and the *district council shall adopt* and from time to time amend a map showing. . .". Chapter 667 of the Laws of 1979 effective July 1, 1979, amended the above to read: "That the Commission shall initiate *and adopt* and the district council shall *approve* and from time to time amend. . . ." (Emphasis supplied).

Chapter 667, Laws of 1979, was House Bill 1702, which, according to its title, was

> "An Act concerning
>
> Maryland-National Capital Park and Planning Commission — *Prince George's County* — Planning Function
>
> For the purpose of providing additional control over the planning function of the Maryland-National Capital Park and Planning . Commission by the District Council for *Prince George's County;* and generally relating to the planning function in *Prince George's County.* (Emphasis supplied).

The amendment to Section 7-108 (b) contained in House Bill 1702 can apply constitutionally only to Prince George's County; application of the amendment to Montgomery County would be unconstitutional. Maryland Constitution, Article III, Section 29. Also we observe that the argument that there is a substantive difference between the original and the amended sections may amount to nothing more than semantics. It appears that the amendments may have been nothing more than a housekeeping effort to conform the language of sub-section (b), "Local planning areas and local master plans" with the language in sub-section (a), "General plan." Since it is not necessary for us to decide that issue we will not do so. We do conclude, however, that with regard to Montgomery County the pre-1979 language in 7-108 (b) applies. It is worth noting that the word "approved" is used in Section 59-H-7.1 (*supra*) to describe the actions of the Council in enacting into law the zoning changes contained in the sectional or district map amendment).

* * *

(ii) That, in accordance with the work program and budget adopted by the county council of that county, the Commission shall initiate and adopt, and from time to time may amend or revise, a local master plan for each planning area, any part thereof, or any combination of contiguous planning areas;

(iii) That a local master plan may include recommendations for zoning, staging of development and public improvements, and public services relative to the implementation of the plan;

* * *

With respect to zoning authority, section 8-101 provides:

(a) The county councils of Montgomery County and Prince George's County are each individually designated, for the purposes of this article, as the district council for that portion of the regional district lying within each county, respectively.

(b) Grant of zoning power. — Each district council, respectively, in accordance with the conditions and procedures specified in this article, may by ordinance adopt and amend the text of the zoning ordinance and may by resolution or ordinance adopt and amend the map or maps accompanying the zoning ordinance text to regulate [land use] in the portion of the regional district lying within its county. . . .

* * *

Section 8-104, Amendments to zoning regulations — Generally, further provides:

(a) Authorized procedure. — After duly advertised public hearing each district council from time

to time may amend its regulations or any regulation, including the maps or any map, in accordance with procedures established in the respective zoning ordinances.

The relevant ordinances are contained in Montgomery County Code, Chapters 33A and 59, which pertain to the planning and zoning processes, respectively. Montgomery County Code (1977 Repl. Vol.) Chapter 33A refers to the final draft of the master plan and the duties of the district council in connection therewith:

Sec. 33A-7. Final draft.

(a) Following the close of the record of the public hearing, the commission shall prepare and submit to the district council . . . a final draft of the [master] plan incorporating appropriate revisions and modifications to the preliminary draft.

* * *

(b) Within ninety days following receipt of the final draft of the plan from the commission, the district council *shall either:*

(i) Approve or disapprove the final draft as submitted by the commission; or

(ii) Conduct a public hearing on the final draft. A public hearing shall be required whenever the district council proposes any revisions, modifications or amendments to the final draft as submitted by the commission. (Emphasis supplied.)

Chapter 59 sets out the authority of the district council with reference to a sectional or district map amendment, the vehicle used to implement the zoning recommendations contained in the master plan:

Sec. 59-H-7.1. Basis and types of action.

An application for a sectional or district map amendment shall be decided on the basis of the evidence of record. It shall be approved, with or without modification in whole or in part, as the district council deems appropriate, as a map amendment with the force and effect of law, or it shall be denied. The district council may file an application for a map amendment at any time without regard to time limitations.

It is important for the purposes of this opinion to distinguish between "planning" and "zoning." The planning and zoning functions are different. As Judge Finan pointed out for the Court in *Chapman v. Montgomery County,* 259 Md. 641, 643 (1970):

"A 'Master Plan' is not to be confused as a substitute for a comprehensive zoning or rezoning map, nor may it be equated with it in legal significance. . . . The zoning as recommended or proposed in the Master Plan may well become incorporated in a comprehensive zoning map . . . but this will not be so until it is officially adopted and designated as such by the District Council."

In a recent case, *Howard County v. Dorsey,* 292 Md. 351, 361-62 (1982) the distinction between planning and zoning was further refined by Judge Davidson for the Court:

"There is a distinction between a master plan and a comprehensive zoning or rezoning that results from a distinction between the planning function and zoning function. In *Board of County Commissioners of Carroll County v. Stephans,* 286 Md. 384, 389, 408 A. 2d 1017, 1019 (1979), this Court said:

'[S]ome confusion exists relative to the terms planning and zoning, which are not synonymous. Zoning is concerned with the use

of property but planning is broader in its concept. 1 E. Yokley, Zoning Law and Practices § 1-2 (4th Ed. 1978) comments:

"Expressing the matter in another way, let us say that zoning is almost exclusively concerned with use regulation, whereas planning is a broader term and indicates the development of a community, not only with respect to the uses of lands and buildings, but also with respect to streets, parks, civic beauty, industrial and commercial undertakings, residential developments and such other matters affecting the public convenience and welfare as may be properly embraced within the police power.' "

The end product of the planning function is the production of a master plan that embodies recommendations for an area's development based on predictions of needs and resources for an estimated future period. It proposes goals for orderly growth and development including the establishment of viable neighborhoods for which it delineates appropriate boundaries. In addition, it suggests methods for implementation and achievement of those goals, including proposals for future land use and zoning classifications. The end product of the comprehensive zoning function is a comprehensive zoning map that establishes, through zoning classifications, the way in which land may presently be utilized and developed. The zoning function is essentially limited to the establishment of land use districts through the imposition of zoning classifications." (Citations omitted).

### The Facts

The Commission submitted to the Montgomery County District Council the Potomac Master Plan, encompassing an area of 56 square miles, 98 percent of which is zoned residential. The Master Plan included the recommendation that the original zoning of appellants' 12.37 acres be changed from R-2 (minimum two acres per lot) to R-200 (minimum one-half acre per lot). On April 15, 1980, the Council approved the Final Draft Master Plan, which included the above zoning change recommendation. On April 24, 1980, the Commission adopted the Master Plan and, on May 9, 1980, filed Sectional Map Amendment Application No. G-247 with the Council. G-247 is a sectional zoning map containing the Master Plan's zoning recommendation on that parcel of land comprising 3,418.57 acres, including the appellant's 12.37 acres.

After conducting hearings on July 8 and 17, 1980, the Council amended G-247 so that the recommended zoning change from the original two acre requirement to the one-half acre requirement was deleted. The effect of this was to continue the current 2 acre requirement on appellant's 12.37 acres. Thereafter, on September 30, 1980, by Resolution 9-978, which passed with four affirmative votes, the Council adopted G-247 in its amended form, which conformed to the zoning recommendation of the previously approved Master Plan except for the amendment affecting appellant's property. For reasons unrelated to this appeal, the Circuit Court for Montgomery County remanded G-247 to the Council, which, by a seven to zero vote, readopted the comprehensive rezoning in the new resolution, Number 9-1443.[2] Appellants had already appealed on the basis of

---

2. It is of particular significance, we believe, to note the closing paragraph of Article 66D, §8-104 (a):

"In Montgomery County, in all applications which seek a classification other than that which is attached to the subject properties on a local master plan, approved by the district council, under the provisions of §7-108 (e) of this article, these applications shall be granted only by the affirmative vote of five members of the district council. If the application for reclassification is recommended for approval by the Commission or if the application is for a zoning

Resolution 9-978 to the Circuit Court at the time Resolution 9-1443 was passed. Their appeal based on 9-1443 was consolidated with the previous appeal. Answers to the appellant's Petition of Appeal were filed by Montgomery County and West Montgomery County Citizens Association, et al., the appellees here. By its order of April 12, 1982, the Circuit Court affirmed the Council's action retaining the two-acre zoning of the appellant's property.

The Circuit Court found (1) that the process involved was part of a comprehensive rezoning; (2) that as such there is a presumption of validity; (3) that the appellants had failed to overcome that presumption; (4) that since the Council was acting in a legislative function, the appellant had no right to cross-examine witnesses at the sectional map amendment hearings (not an issue in this case), (5) "that the comprehensive rezoning bears a substantial relationship to the public health, safety and general welfare," and finally (6) that "the Council did not act in an arbitrary and discriminatory manner in adopting" the two resolutions.

Appellants contend, in essence, that the Council deviated from the Commission's master plan without new evidence of record to support such a deviation. Consequently, they argue that the Council's action with respect to their property is not part of a comprehensive rezoning, and, as such, is not entitled to the presumption of validity accorded it by the Circuit Court. Absent this presumption, they contend, we should

---

classification created after the approval of the master plan by the council, then an affirmative vote of four members of the district council is required to grant the application or applications. In all other cases, an application may not be granted except by affirmative vote of at least four members of the district council."

It appears that the procedure followed by the council in the case *sub judice* was considered as a probability by the draftsmen of the statute, and that they provided for a more stringent procedure if the council decided not to follow the plan that had been recommended by the Commission and approved by it and the Council. As we have noted, the amendment to G-247 received only four affirmative votes — one less than legally required by Section 59-H-8.2 of the Montgomery County Code — when it was first before the Council in Resolution 9-978. Later, however, when the Circuit Court remanded the rezoning to the Council on an unrelated issue, it received more than the required five votes as part of Resolution 9-1443.

find that the Sectional Map Amendment G-247 as applied to their property does not bear a substantial relationship to the public health, safety or welfare. We agree with the lower court's findings, however, and thus affirm its order upholding the Council's zoning decision.

## II.

### Comprehensive Zoning

Appellants ask:

"Whether the District Council can (i) adopt a master plan which is the product of years of study and public participation and which recommends a specific zoning for a given property, (ii) act on a sectional map amendment, the sole purpose of which is to implement the zoning recommendations of the master plan and which requests the master planned zoning for the property, by refusing to grant the requested rezoning for the property in question, thereby ignoring the master plan, and *having no new evidence of record on which to base its action,* and (iii) successfully maintain that its actions were comprehensive zoning as to the property in question." (Emphasis supplied).

They contend that:

"The recommendations contained within the Potomac Subregion Master Plan cannot support the Council's legislative action as to the 12.37-acre portion of the Subject Property because the recommendations of the Plan are contrary to the zoning action taken and because there is no evidence of record different from that presented in the master plan process to support the Council's action. As in *Horman,* [46 Md. App. 491 (1980)] there is no basis for the District Council's action with respect to the 12.37-acre portion of the Subject Property and the action cannot stand [as comprehensive zoning]."

They further argue that because there was no new evidence adduced upon which the amendment to Sectional Map Amendment G-247 could be based, the only basis for the amendment was improper accession by the Council to a plebiscite of the residents of the affected community.

*Montgomery County v. Woodward and Lothrop, Inc.,* 280 Md. 686 (1977) holds, however, that:

> "There is no requirement that the area covered by a sectional map amendment coincide with the area of the relevant Master Plan . . . . Nor is there any requirement, absent a statute, that the map amendment must adhere to the recommendations of the General or Master Plan. Such land use planning documents represent only a basic scheme generally outlining planning and zoning objectives in an extensive area, and are in no sense a final plan; they are continually subject to modification in the light of actual land use development and serve as a guide rather than a strait jacket." *Id.* at 703-04.

In *Montgomery County v. Horman, supra,* the land found not to be part of the comprehensive plan was actually outside the boundaries of the plan. 46 Md. App. at 497. That is not the situation here.

In July, 1980, the Council held public hearings on Sectional Map Amendment G-247, which contained the proposed zoning change of the subject property from two acre to one-half acre lots. During those hearings there was substantial citizen opposition to the zoning change. Council woman Crenca (apparently the council representative from the district wherein the subject property is located) was persuaded by her constituents that the zoning of the property should remain at a two acre minimum. The first resolution passed by the Council contained the following:

> "A great deal of attention was given by the Council in consideration of the Bedfordshire property. The Sectional Map Amendment proposes that a 12 acre portion of this property be reclassified from

RE-2 to R-200. Extensive written and oral testimony was received in this matter to the effect that development of the property in the R-200 Zone would be incompatible with the existing residential character of the area and would require that extensive storm water management and erosion measures be taken at public expense to preserve the quality of Kilgour Branch. After detailed review of the evidence of record the Council agreed that the R-200 Zone was inappropriate for the Bedfordshire property and that it would be in the public interest to retain the site in its existing RE-2 classification."

Resolution No. 9-978, September 30, 1980, pp. 2 and 3.

In their reply brief appellants refer us to Sections 33A-7 and 59-H-7.1 of the County Code, *supra,* to support their argument that "[a]n application for a sectional or district map amendment shall be decided on the basis of the evidence of record. . . ." Appellants further set out in their reply brief:

"Since (i) the sectional map amendment had to be based on evidence of record, (ii) the evidence of record with respect to Appellants' property was the same evidence as that in the Master Plan record, and (iii) the District Council reached opposite conclusions on the same evidence, the conclusion is inescapable that the District Council's actions with respect to the Subject Property were arbitrary, capricious and illegal."

Even if we assume, *arguendo* that, after the Council adopted the Master Plan, its July 1980 hearings produced no new evidence justifying variation from the Master Plan, does this mean that it could not vote for such a variation?

Clearly, section 59-H-7.1 of the Montgomery County Code authorizes the Council to approve a sectional amendment" . . . with or without modification, in whole or in part, as the district council deems appropriate . . .". There is no reference in this section to the master plan or the evidence upon which it was based. Section 59-H-7.1 appears to us to give the

Council a fresh crack at the recommended zoning without requiring that the evidence be different from that used to adopt the master plan.

We hold that there are two separate and distinct procedures and standards required in the Council's adoption/approval of the master plan and in the Council's adoption of the sectional map amendment for the purpose of legally implementing comprehensive rezoning. These are set out in sections 33A-7 and 59-H-7.1 of the Montgomery County Code, *supra.* If the Council does not either simply approve or disapprove the final draft of the master plan as submitted it must conduct a public hearing on the final draft, and a public hearing is specifically required "whenever the district council proposes any revisions, modifications or amendments to the final draft as submitted by the commission." §33A-7 (b)(ii), Montgomery County Code. While the foregoing is applicable to the master plan process the decision of the Council with reference to the enactment into law of the zoning changes contained in the sectional or district map amendment must be based on the evidence of record and may encompass approval "with or without modification, in whole or in part, as the district council deems appropriate." Section 59-H-7.1. There is no requirement of additional hearings. The only "evidence of record" at the time the sectional or district map amendment is submitted by the Commission to the district council is that evidence that had been produced in the adoption/approval of the master plan. Section 59-H-7.1 provides that based on that evidence of record the district council shall approve the sectional or district map with or without modification as it deems appropriate. It is precisely this that the Council did in the case before us.

As to the charge that the action of the Council in this case was based on a plebiscite, we note that this same argument was rejected in *Montgomery County v. Horman, supra,* 46. Md. App. at 497, which states:

"Appellees assert that the zoning action was arbitrary because it was based upon a plebiscite of the

neighborhood citing the various 'decisions to revise a number of acres of land there was to be permitted on the appellees' property.' *In comprehensive rezoning it is proper for the zoning authority to consider the opinions of the citizens. So long as there is any rational basis for legislative action, that action will be upheld by the courts.* As we have stated it was reasonable for the Council to conclude that the desirability of preserving the rural and residential character of Boyds required the zoning changes." [Emphasis added.]

In sum, the zoning of appellants' property clearly was the subject of hearings conducted during the comprehensive planning and zoning processes, and is consequently entitled to be considered a part of the resultant comprehensive zoning.[3]

## Presumption of Validity

The standard of review to be used by the court was set out in *Ark Readi-Mix Concrete Corp. v. Smith,* 251 Md. 1, 4 (1968) and quoted in *Montgomery County v. Horman, supra,* 46 Md. App. at 494-95:

"Zoning is a legislative function, and when reviewing the acts of zoning authorities, the duty of the courts is to decide whether such action was arbi-

---

3. In fact, as we have pointed out, the District Council did hold two public hearings on the sectional map amendment. There may have been at least some evidence that additional information was brought before the District Council during one of these hearings. This consisted of the correction of the erroneous conclusion reached by the District Council before action on the master plan that if the change were not approved the county would have to purchase park land that would otherwise be dedicated. After the adoption of the map, at the public hearing of July 8, 1980, preceding council action on the sectional map amendment, it was made clear to the Council that this was not the case. In their reply brief appellants attempted to rebut this by pointing out that all of the evidence, including the basis for the dedication of the park land, was before the District Council before their approval of the master plan. The District Council may have had the evidence before it and erroneously reached the wrong conclusion at the time they voted on the master plan, however, because of our holding, *supra,* it is not necessary for us to base our opinion in this case on a resolution of this issue.

trary, discriminatory or illegal [citations omitted]. . . . When a comprehensive map designed to cover a substantial area is adopted, it is entitled to the same presumption of correctness as an original zoning [citations omitted]. Thus, persons attacking the correctness of the map's classifications have a heavy burden of overcoming the presumption of their validity. This burden is heavier in the case of comprehensive zoning than in the case of a piecemeal reclassification [citations omitted]."

Even if the specific rezoning was included as a part of a comprehensive plan, appellants argue that the specific rezoning may be invalidated where the record does not support the action of the zoning body. As authority appellants cite *George F. Becker Co. v. Jerns,* 230 Md. 541, 545 (1963), wherein the Court held:

"That the adoption of a new zoning plan and map would ordinarily constitute a comprehensive rezoning which is entitled to the same presumption of correctness as the original zoning. [Citations omitted]. *But that does not necessarily mean that all parts of a comprehensive rezoning are valid in every case. . . ."* (Emphasis supplied).

In *Becker,* however, a Board of County Commissioners, after conducting a hearing, granted a landowner's request to reclassify his property from residential to industrial use. This reclassification was being challenged in court when the County Planning Commission submitted to the Board a new general plan for county zoning, recommending that the original residential classification of the property in question be retained. After conducting a number of hearings, at which no change from the general plan was ostensibly contemplated, the Board adopted the new plan, with a revision to show that the property in question was rezoned as industrial. The evident basis for this revision was that "the board, having made up its mind as to what was proper zoning for the property two years before, never abandoned the opinion

then expressed, and based its decision to revise the comprehensive zoning map solely on conditions that existed 'back in 1959' without considering any further evidence because (as the president of the board testified) such conditions had not 'changed at all.' " *Id.* at 544. The Court of Appeals held that the rezoning of the subject property was not entitled to the presumption of correctness customarily accorded comprehensive rezoning, because "the rezoning under attack should not have been a part of the new plan." *Id.* at 545.

In this case, by contrast, the intention to rezone appellants' property was publicly announced, and substantial evidence was adduced during the planning and zoning processes to demonstrate the desirability of retaining its original two-acre classification. As a result, the Council's decision regarding the subject property is entitled to the presumption of validity usually accorded comprehensive zoning.

### Public Welfare

In *Stump v. Grand Lodge,* 45 Md. App. 263, 269 (1980), we pointed out that:

> "Comprehensive rezoning is a vital legislative function, and in making zoning decisions during the comprehensive rezoning process, a County Council is exercising what has been described as its 'plenary' legislative power. The power is broad and is limited only by the constitutional restriction that the Council's action 'bears a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare. . . .' *Norbeck Village Joint Venture v. Montgomery County Council,* 254 Md. 59, 66, 254 A. 2d 700 (1969); *Coppolino v. County Board of Appeals,* 23 Md. App. 358, 370, 328 A. 2d 55 (1974)."

The final argument of the appellant is that the Circuit Court erred in ruling that G-247 as it applied to appellant's

property bears a substantial relationship to public health, safety and welfare. The sole basis for the contention is that the Council's "action in zoning appellant's property to RE-2 by Sectional Map Amendment G-247 was not supported by substantial evidence of record." We find this to be without support in the record. We have already held that the Council may decide to modify a sectional or district map amendment on the basis of the evidence of record before it produced during the adoption of the master plan. Moreover, as the lower court found, there was substantial written and oral testimony presented at the Council's July 1980 hearings to the effect that altered zoning of the subject property would be incompatible with the existing residential character of the area, and would require extensive storm water management and erosion control measures at public expense. Based on this evidence, the lower court properly found that the Council's zoning decision bore a substantial relationship to the public interest.

We conclude as did the trial court that

"... [a]ppellants have failed to overcome the presumption of validity of the comprehensive rezoning ... especially since the comprehensive rezoning at issue left the original zoning on the subject property, in effect since 1954 intact."

Accordingly we affirm the judgment of the Circuit Court for Montgomery County.

*Judgment affirmed.*
*Costs to be paid by appellants.*